UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JOHN H. UNDERHILL,

        Plaintiff,                         Case No. 14-cv-14768

v                                         Honorable Thomas L. Ludington

SHERI ROYER, JANE DOE, and
SCOTT L. PAVLICH,

        Defendants.

_____/

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS, DISMISSING PLAINTIFF'S COMPLAINT, DENYING MOTION FOR LEAVE TO AMEND, AND CANCELLING HEARING**

On December 17, 2014, Plaintiff John Underhill filed suit against Defendant Scott Pavlich, a Michigan judge, and Defendant Sherri Royer, a case worker with Michigan's Department of Human Services, alleging procedural and substantive due process violations. Underhill claims that Defendants violated his constitutional rights when they altered the custody arrangements of his minor child.

Both Defendants filed motions to dismiss the amended complaint; they each asserted that they were entitled to immunity. Because Defendant Pavlich is entitled to absolute judicial immunity, his motion to dismiss will be granted.[1]  And because Defendant Royer is entitled to qualified immunity, her motion to dismiss will also be granted.

After the parties filed motions to dismiss, Underhill filed a motion for leave to file a second amended complaint, which would allege an official capacity claim against Judge Pavlich.

---

[1] Underhill did not file a response to Judge Pavlich's motion to dismiss.

Because such a claim would be frivolous, the motion for leave to file a second amended complaint will be denied.

## I.

In August 2009, Underhill was granted primary custody of his daughter. Am. Compl. 2. Underhill and his daughter ("Daughter") lived together in Sault Ste Marie, Michigan.

### A.

In September 2013, Underhill suffered what he believed to be a heart attack. Am. Compl. 2. Daughter dialed 911 and Underhill was taken to the local hospital. *Id*. At the hospital, it was determined that Underhill had not suffered a heart attack, but rather had suffered a severe side effect from his newly-prescribed sleep medication. *Id*. Underhill remained in the hospital until the medication and its side-effects resolved, and Daughter's principal picked her up and took her to school. *Id*.

According to Underhill, because Daughter had dialed 911, "certain caseworkers from the local Department of Human Services got involved." Am. Compl. 2. These caseworkers "encouraged" Karen Underhill (Daughter's mother) "to abscond with [Daughter] in violation of a Michigan Circuit Court Order." *Id*. at 3. Daughter's school released her to Karen Underhill's custody, thus beginning "a two week odyssey of [Daughter] being driven around the State of Michigan by her mother 'hiding' [Daughter] from her father and the long arm of the law." *Id*. Karen Underhill and Daughter were found in Manistique, Michigan about two weeks later, and Daughter was then returned to Underhill's custody.

Following those events, Karen Underhill filed a motion to modify Daughter's custody arrangements in the 50th Circuit Court. The original judge recused himself, leading to the special assignment of Defendant Judge Scott Pavlich to preside over the proceeding.

The Department of Health Services caseworkers, according to Underhill, continued to improperly involve themselves. After an investigation, the Department of Health Services caseworkers closed the file, concluding that any alleged neglect or abuse on Underhill's part was "un-substantiated". Am. Compl. 5. However, Defendant Sherri Royer expressed her personal opinion in a letter to Underhill that he was " 'guilty' none-the-less of 'abuse' and/or 'neglect'" and threatened future prosecution. *Id*. Underhill further alleges that the Department of Health Service released and widely disseminated its investigative documents, even filing them in the 50th Circuit Court in an attempt to "completely prevent further contact between Plaintiff father and his daughter . . . ." Am. Compl. 5-6.

Underhill alleges that Defendant Judge Pavlich relied on these documents in accelerating the hearing date on Karen Underhill's motion to modify custody from October 3, 2014 to August 28, 2014. Then, Underhill continues, at the motion hearing, Judge Pavlich only permitted Karen Underhill to present proofs before he "simply made an oral pronouncement from the bench that he was expanding mother's parenting time to allow her to immediately move 350 miles away and take [Daughter] with her." Am. Compl. 6. Underhill claims that he "has not seen [Daughter] since, except through a car window."[2] *Id*.

**B.**

On December 17, 2014, Underhill filed a complaint alleging that Judge Pavlich, Caseworker Sherri Royer, and unnamed caseworkers had violated his Fourteenth Amendment substantive and procedural due process rights. He also sought a declaratory judgment that the Michigan Child Custody Act was unconstitutional. On February 23, 2015, Underhill filed an amended complaint. It is unclear how the famended complaint differs from his original

---

[2] It appears that Underhill did not file a direct appeal challenging Judge Pavlich's rulings.

complaint; of relevance here, he continues to assert that Judge Pavlich and Sherri Royer violated his due process rights.

## II.

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Both Judge Pavlich and Royer filed motions to dismiss Underhill's Amended Complaint. Underhill did not, however, file any responses.[3]

## III.

On March 2, 2015, Judge Pavlich filed a motion to dismiss, asserting that he was entitled to absolute judicial immunity. Judges are entitled to absolute judicial immunity from suits for all

---

[3] Although proceeding *pro se*, because Underhill is a licensed attorney practicing in the State of Michigan, his amended complaint is not entitled to the liberal construction generally afforded to the pleadings of *pro se* plaintiffs. *See Sabeti v. Maron*, 2012 WL 2001717 (E.D.N.Y. June 4, 2012) (practicing attorney's complaint not entitled to liberal *pro se* construction); *Foulke v. VA State Police*, 2012 U.S. Dist. LEXIS 33826, *1 n.1 (W.D. Va. March 13, 2012) (active member of Virginia bar's complaint not entitled to extra measure of liberal construction); *Zanke-Jodway v. Capital Consultants, Inc.*, 2010 WL 776743 (W.D. Mich. March 3, 2010) (attorney proceeding *pro se* is presumed to be aware of the rules of federal procedure).

actions taken in their judicial capacity, unless the actions are taken in the complete absence of any jurisdiction.[4] *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). The Supreme Court has endorsed a "functional" approach in determining whether an official is entitled to absolute immunity. *Forrester v. White*, 484 U.S. 219, 224 (1988); *Burns v. Reed*, 500 U.S. 478, 486 (1991). Under this functional approach, a court "looks to 'the nature of the function performed, not the identity of the actor who performed it.'" *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (quoting *Forrester*, 484 U.S. at 229).

Typically, a functional analysis turns on two factors: (1) looking to the nature of the act itself, whether the act is a "function normally performed by a judge"; and (2) regarding the expectations of the parties, whether the parties "dealt with the judge in his judicial capacity." *Mireles*, at 12 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)).

Consequently, the central issue is whether Judge Pavlich's acts in question can be considered judicial in nature. Underhill identifies several acts that Pavlich took that allegedly violated his rights. These allegations can be broadly divided into three categories. First, Underhill alleges that Judge Pavlich impermissibly accelerated the motion hearing date:

- Because the 50th Circuit Court Judge recused himself, Judge Scott L. Pavlich was appointed to the child custody case by special assignment. This "required [him] to travel approximately 160 miles round-trip to appear at any proceedings in the case, which prolonged any reasonable access to the court system." Am. Compl. 5.

- Judge Pavlich "immediately accelerated the trial date, regarding Plaintiff[']s motion for change in custody . . . ." Am. Compl. 6.

---

[4] Although common law judicial immunity extended only to suits for money damages, *see Pulliam v. Allen*, 466 U.S. 522, 541-43 (1984), Congress expanded the scope of that immunity by enacting the Federal Courts Improvement Act of 1996 ("FCIA"). *Gilbert v. Ferry*, 401 F.3d 411, 414 n.1 (6th Cir. 2005). The FCIA amended 42 U.S.C. § 1983 to provide that, "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." As a result of this amendment, 42 U.S.C. § 1983 "explicitly immunizes judicial officers against suits for injunctive relief." *Roth*, 449 F.3d at 1286; *accord Gilbert*, 401 F.3d at 414 n.1 (noting that a Michigan State Court Administrator is "absolutely immune from injunctive relief under the judicial immunity doctrine").

Second, Underhill alleges that Judge Pavlich failed to make and state the required findings before issuing an order on the motion:

- At the motion hearing, "Defendant Judge Pavlich simply made an oral pronouncement from the bench that he was expanding mother's parenting time to allow her to immediately move 350 miles away and take [Daughter] with her." Am. Compl. 6.

- Judge Pavlich's "conduct of denying the Plaintiff an opportunity to be heard violated his basic *due process* rights . . . ." Am. Compl. 6 (emphasis original).

- Judge Pavlich "fail[ed] and refus[ed] and continu[es] to fail and refuse to serve a judicial function by issuing required 'findings', required decision(s) and/or any order to support his oral pronouncement from the bench." Am. Compl. 6.

Third, Underhill alleges that Judge Pavlich failed to act in a timely manner:

- Judge Pavlich "failed to even act within lawfully imposed time deadlines on his performance." Am. Compl. 6.

- Judge Pavlich "has refused any enforcement action designed to re-unite Plaintiff with his daughter . . . ." Am. Compl. 7.

All the actions taken by Judge Pavlich as described in the Complaint were unquestionably judicial in nature. *Mann v. Conlin*, 22 F.3d 100, 104 (6th Cir. 1994) (state judge's orders in child custody and visitation proceedings were judicial acts); *Lunsford v. Kentucky Cabinet for Health and Family Services*, 2012 WL 2880577, at *3 (E.D. Ky. July 13, 2012) (judge's actions during child custody proceedings judicial acts). These actions are functions normally performed by a judge. Indeed, courts have called these actions "paradigmatic judicial acts" because they involve "resolving disputes between parties who have invoked the jurisdiction of a court." *Forrester*, 484 U.S. at 227; *see also Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 (recognizing that the "touchstone" for judicial immunity has been the "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." (quotation omitted)).

Nor has Underhill alleged that Judge Pavlich acted "in the complete absence of all jurisdiction." The Family Division of Michigan Circuit Courts has "sole and exclusive jurisdiction over . . . cases of divorce and ancillary matters . . . ." Mich. Comp. Laws. § 600.1021(a). In general, once the Family Division exercises jurisdiction over a child and issues an order pursuant to the Child Custody Act, "the court's jurisdiction continues until the child is 18 years old." Mich. Comp. Laws § 722.27(1)(c). Therefore, under Michigan law, Judge Pavlich had the authority and jurisdiction to take the above actions.

Although Underhill strongly disagrees with many of Judge Pavlich's actions in the child custody dispute, the preferred method of advancing those disagreements is through direct appeal of those actions. *See Bright v. Gallia Cnty.*, 753 F.3d 639, 649 (6th Cir. 2014) ("In general, litigants can protect themselves from judicial errors through the appellate process or other judicial proceedings without resort to suits for personal liability . . . ."). Because Judge Pavlich is entitled to absolute immunity on Underhill's claims, his motion to dismiss will be granted.

**IV.**

Defendant Sherri Royer also filed a motion to dismiss, claiming that she was entitled to qualified immunity.[5] Qualified immunity protects government officials from liability under § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*¸457 U.S. 800, 818 (1982). When this defense is raised, it becomes the plaintiff's burden to prove that the government official is not entitled to qualified immunity. *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). To overcome qualified immunity, a plaintiff must allege facts that, "when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that:

---

[5] Royer also claimed that Underhill had not satisfied the standard for granting declaratory relief. However, as Underhill clarified in his Response to the Show Cause Order (ECF No. 27), "Plaintiff's Count 1 seeking declaratory relief is not directed at Defendant Sherri Royer." *Id*. at 1.

(1) the defendant violated a constitutional right; and (2) the right was clearly established." *Kovacic v. Cuyahoga Cnty. Dep't of Children and Family Servs.*, 724 F.3d 687, 695 (6th Cir. 2013) (citation omitted). Underhill cannot overcome Royer's qualified immunity because he has not alleged that she violated a constitutional right.

Underhill alleges that Royer violated his due process rights to family integrity when she:

> closed the DHS investigative file in a letter, but then expressed her personal opinion that Plaintiff father was "guilty" none-the-less of 'abuse' and/or 'neglect' of [Daughter] and threatened future prosecution

Am. Compl. 5. Underhill also appears to allege the Royer violated his due process rights because she may have reported alleged sexual abuse:

> The case worker(s) from the Cheboygan County DHS office is a named Defendant (s) in this case simply because Plaintiff father has learned that a simple contact alleging sexual abuse, although not made in good faith and failing to contain a thread of truth, and in violation of Plaintiffs Constitutional rights to due process, lead to certain documents being unlawfully dessiminated [*sic*]to the post commander of the Michigan State Police post in Sault Sainte Marie Michigan where the Plaintiff resided with his daughter; and action(s) that had an enhancement effect to the seriousness attached to any subsequent contact with DHS officials in the Chippewa County office of DHS leading to more serious action being taken.

Am. Compl. 14.

The Due Process Clause of the Fourteenth Amendment guarantees that: "No State shall . . . deprive any person of life, liberty, or property, without due process of law." Parents have a fundamental liberty interest in family integrity—including the right to the care, custody and control of their children—that is protected by the substantive and procedural due process guarantees of the Fourteenth Amendment. *See Kottmyer v. Maas*, 436 F.3d 684, 689-90 (6th Cir. 2006).

Importantly, however, all of Underhill's allegations refer to Royer's conduct *before* the circuit court issued a decision resulting in a change of custody. In other words, the circuit court

was the final decision-maker, not Royer. *See Kolley v. Adult Protective Servs.*, 725 F.3d 581, 586 (6th Cir. 2013) ("Michigan courts also have the ultimate decision-making power on custody and guardian appointment . . . ."). And where Royer did not have the ultimate decision-making power regarding the child custody issues, Underhill cannot demonstrate that *she* violated his fundamental right to family integrity.

In a similar case, the Sixth Circuit concluded that the plaintiff's substantive and procedural due process claims failed because the plaintiff could not show the defendant was the final decision maker. In *Pittman*, a father brought a § 1983 action against the Cuyahoga County Department of Children and Family Services along with the primary social worker for the son, who had been removed from the mother's custody by Cuyahoga Family Services. *Pittman v. Cuyahoga Cnty. Dep't of Children and Family Servs.*, 640 F.3d 716, 718 (6th Cir. 2011). Claiming that his fundamental right to family integrity had been violated, Pittman alleged that the social worker made "detrimental misrepresentations about Pittman in internal proceedings," and as a result Cuyahoga Family Services determined he was unfit to be a caregiver to his son. *Id*. at 729.

Nevertheless, the Sixth Circuit found Pittman's substantive due process arguments unpersuasive because "to the extent that Pittman has suffered a deprivation of his fundamental right to family integrity, that deprivation was perpetrated by the juvenile court, not by [the social worker]." *Id*. Because the juvenile court held "the ultimate decision-making power with respect to placement and custody, it alone could deprive Pittman of his fundamental right," and the social worker's conduct did not violate Pittman's substantive or procedural due process rights.

The Sixth Circuit's opinion in *Pittman* is controlling here. Royer was not the ultimate decision-maker regarding custody of Underhill's daughter, and therefore she did not violate his

procedural or substantive due process rights. And because Underhill has not shown that Royer committed a constitutional violation, she is entitled to qualified immunity on Underhill's Fourteenth Amendment claims.

## V.

Additionally, Underhill's claims against Jane Does will also be dismissed because he has not identified them by their real names and has not effected service of process on them within 120 days from the filing of the original complaint as required by Federal Rule of Civil Procedure 4(m). *Dubose v. City of Morristown*, 2009 WL 1766008, at \*6 (E.D. Tenn. June 22, 2009); *Doughty v. City of Vermillion*, 118 F. Supp. 2d 819, 821 n. 1 (N.D. Ohio 1999). Accordingly, all claims brought against unnamed caseworkers Jane Does in their individual capacities are dismissed with prejudice.

## VI.

On April 23, 2015, Underhill filed a motion for leave to file a second amended complaint. Underhill seeks to add language indicating that he is suing Judge Pavlich in his official capacity (in addition to his individual capacity). Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, "a party must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension and Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995). A court may deny leave to amend a complaint when the amendment is brought in bad faith, will result in undue delay or prejudice to the opposing party, or is futile. *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995). If an amendment cannot withstand a motion to dismiss under Rule 12(b)(6), the motion to amend should be denied as futile. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

Here, amendment of the complaint would be futile. By suing Judge Pavlich in his official capacity, Underhill attempts to challenge the constitutionality of Michigan's Child Custody Act. Underhill alleges that the Child Custody Act

> is unconstitutional on their face and as applied to the Plaintiff, because Michigan Court Rule(s) and statute(s) does not require, and/or provide, that a child can only be removed from a parent's custody in compliance with fundamental constitutional rights of the parents and fails to provide that a child can be removed from a parent's custody, *without first affording an opportunity to be heard*, ONLY under "exigent circumstances" or where there is "imminent danger " to the health, welfare and/or safety of the child, as required by the guarantees of the due process clause of the Fourteenth Amendment of the United States Constitution. [*sic* throughout]

Mot. Amend Ex. 2 ¶ 25 (emphasis added). In other words, it appears that Underhill alleges that the Michigan Child Custody Act violates the Fourteenth Amendment because it does not afford him procedural due process: he alleges that the Act does not require a hearing or notice before altering custody arrangements.[6]

This assertion is flatly contradicted by Michigan law, however. Before parental custody can be modified under the Child Custody Act, "[a]n evidentiary hearing is mandated . . . ." *Grew v. Knox*, 694 N.W.2d 772, 774 (citing *Schlender v. Schlender*, 596 N.W.2d 643 (1999) and Mich. Ct. Rule 3.210(C)); *see also Donohue v. Donohue*, 2014 WL 1921315, at *2 (Mich. Ct. App. May 13, 2014) ("Inexplicably, the trial court [modified the custody arrangements] without holding an evidentiary hearing. This was in error.").

Thus, if as Underhill alleges, he did not receive notice of the child custody modification motion and did not receive a hearing, then these failures were *in violation of* the Child Custody Act—not pursuant to the Child Custody Act. Because the Child Custody Act provides the relief

---

[6] Underhill appears to allege that the Michigan Child Custody Act permits the removal of a child from a parent's custody. However, the Michigan Supreme Court has clarified that the Act does not govern removal proceedings (e.g., in instances where a child is in danger) or termination of parental rights, but rather "the Child Custody Act governs the resolution of *disputes* between one or more parties claiming a right to the custody of a child." *Bowie v. Arder*, 490 N.W.2d 568, 581 (Mich. 1992) (emphasis original).

- 11 -

that Underhill requests—notice and opportunity to be heard—the Child Custody Act does not violate the Fourteenth Amendment's due process guarantees of notice and an opportunity to be heard. Accordingly, Underhill's request for declaratory relief against Judge Pavlich in his official capacity would be futile. Underhill's motion for leave to amend will be denied.

## VII.

Accordingly, it is **ORDERED** that Defendant Pavlich's Motion to Dismiss (ECF No. 21) is **GRANTED**.

It is further **ORDERED** that Defendant Royer's Motion to Dismiss (ECF No. 24) is **GRANTED**.

It is further **ORDERED** that the motion hearing set for July 22, 2015 is **CANCELLED**.

It is further **ORDERED** that Underhill's claims against "Jane Does" are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Underhill's Amended Complaint (ECF No. 19) is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Underhill's motion for leave to file second amended complaint (ECF No. 35) is **DENIED**.

                                                     s/Thomas L. Ludington
                                                     THOMAS L. LUDINGTON
                                                     United States District Judge

Dated: May 19, 2015

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 19, 2015.

                                    s/Karri Sandusky
                                    Karri Sandusky, Acting Case Manager